[No. 4853–II.   Division Two.   March 5, 1982.]

THE STATE OF WASHINGTON, *Respondent,* v. BEN ROBERTS, *Appellant.*

*Mark L. Yelish,* for appellant.

*C. Danny Clem, Prosecuting Attorney,* and *Kenneth G. Bell, Deputy,* for respondent.

JOHNSON, J.*—At about 4:45 a.m. on April 2, 1980, in response to a complaint of a disturbance at an apartment complex at 1018 Burwell in Bremerton, Officer Rogers came in contact with Laura Brown on an interior stairway. Upon learning her name and age, he checked with the department and found that she was a runaway. He took her into custody pursuant to the provisions of RCW 13.32A.050. She requested that she be permitted to get her personal belongings from apartment No. 10. Rogers accompanied her to the apartment and knocked on the door which was opened by the defendant Roberts. Rogers was aware that there were several persons in the apartment including another juvenile runaway. He also knew that there were some windows and another exit door through which one could escape.

Officer Rogers stood at the doorway when Laura entered

---

*Judge Bertil E. Johnson is serving as a judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

the apartment and when Laura went into the bedroom he advanced to the kitchen to keep her in view. He then saw on a table in the kitchen a number of bricks of cheese, two hunting knives and what he believed to be a .45 caliber pistol. He also saw a number of boxes in crates bearing the Darigold brand name, cartons of eggs, milk, chocolate milk and orange juice. He asked Roberts for permission to inspect the refrigerator which was granted and there he found more cheese, milk and orange juice. On learning that the Darigold plant had been burglarized he arrested Roberts and the other occupants Reynolds, Mires, Fitzke, Brown and another juvenile runaway Stanton. Thereafter a search of the adjoining bedroom revealed a navy pea coat belonging to Reynolds in which was found a padlock. Also found was a pair of bolt cutters.

The defendant filed a motion to suppress the evidence found in the apartment, both before and after the arrest. The trial court denied the motion to suppress.

The defendant makes two assignments of error. (1) Did the trial court err in failing to grant the appellant's motion to suppress the evidence seized prior to his arrest? (2) Did the trial court err in failing to grant appellant's motion to suppress the evidence seized after the appellant's arrest?

The trial court found that the evidence observed by the officer before arrest was proper under the "plain view" exception to the Fourth Amendment. This is challenged on the single ground that the officer's presence in the apartment was not justified.

■■ The "plain view" exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is inadvertently discovered in a place where the officer has a right to be. *Coolidge v. New Hampshire*, 403 U.S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022 (1971).

The controlling case under the facts of the case at bench is *Washington v. Chrisman*, 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982) decided by the Supreme Court of the United States on January 13, 1982. In that case Officer

Daugherty observed a student, Overdahl, leave a student dormitory carrying a half–gallon of gin. The officer suspecting he was under the age of 21 asked for identification. The student said his identification was in his room so both of them proceeded to the student's room. On the way the student admitted he was 19 years of age and the officer placed him under arrest. They went to the room, the officer remained at the doorway but he observed within the room what appeared to be a pipe of the type used in smoking marijuana and a tray containing seeds. The officer entered the room, examined the pipe and seeds and arrested the two occupants.

The trial court denied a motion to suppress which ruling was affirmed by the Court of Appeals in *State v. Chrisman,* 24 Wn. App. 385, 600 P.2d 1316 (1979). The Supreme Court of the State of Washington in *State v. Chrisman,* 94 Wn.2d 711, 619 P.2d 971 (1980) reversed the Court of Appeals decision and held that although Overdahl had been placed under lawful arrest and there was nothing to prevent the officer from accompanying him to his room, the officer had no right to enter the room and either examine or seize contraband without a warrant. The seizure of the pipe and seeds did not fall within the "plain view" doctrine exception to the Fourth Amendment warrant requirements. The Supreme Court of the United States reversed.

In the course of its opinion the United States Supreme Court said in 455 U.S. at 6–9:

> The officer had a right to remain literally at Overdahl's elbow at all times; nothing in the Fourth Amendment is to the contrary.
>
> . . .
> We therefore conclude that, regardless of where the officer was positioned with respect to the threshold, he did not abandon his right to be in the room whenever he considered it essential. . . . This is a classic instance of incriminating evidence found in plain view when a police officer, for unrelated but entirely legitimate reasons, obtains lawful access to an individual's area of privacy. The Fourth Amendment does not prohibit seizure of evi-

dence of criminal conduct found in these circumstances. (Footnotes omitted.)

Thus, we conclude the trial court was correct in denying the motion to suppress as to the evidence seized before the arrest of the defendant.

Did the trial court err in failing to grant the motion to suppress the evidence seized after the arrest of the defendant? We believe the court did err in this regard but find such error to be harmless.

The State attempts to justify the search on the basis that such search was contemporaneous with the arrest of the defendant and on the further ground that another joint occupant of the apartment would return and destroy the evidence.

However, the defendant was arrested in the kitchen. The search was made in the bedroom at least 10 minutes after the arrest of the defendant and his transportation to the police station. The other occupant was not present at the time of the arrest nor was there any evidence that he would return immediately or at all. He was not connected with the burglary nor was there any reason to suspect that he would destroy the evidence.

■ Warrantless searches and seizures are per se unreasonable subject only to a few specifically established and well delineated exceptions. *Katz v. United States,* 389 U.S. 347, 19 L. Ed. 2d 576, 88 S. Ct. 507 (1967). The search can therefore be proper only if it falls within one of the jealously and carefully drawn exceptions to the warrant requirements of the Fourth Amendment. *Jones v. United States,* 357 U.S. 493, 2 L. Ed. 2d 1514, 78 S. Ct. 1253 (1958). *State v. Daugherty,* 94 Wn.2d 263, 616 P.2d 649 (1980).

■ The United States Supreme Court discussed the proper extent of a search incident to an arrest in *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969). "The search incident to arrest" principle is an exception to the Fourth Amendment warrant requirement

which permits a law enforcement officer to search a person arrested in order to remove any weapons, search for and seize any evidence on the arrestee's person to prevent its concealment or destruction and to search the area within his immediate control where he might gain possession of a weapon or destructible evidence. It does not justify a routine search of other rooms than that in which an arrest occurs—or for that matter, searching through all the desk drawers or other closed or concealed areas in that room itself. *Chimel v. California, supra. See also State v. Marcum,* 24 Wn. App. 441, 601 P.2d 975 (1979) and *State v. Daugherty; supra.* The search of the bedroom was not proper or justifiable.

■ The harmless error doctrine permits a conviction to stand even if it follows a denial of the defendant's constitutional right, if the appellate court is able to declare its belief that the error was harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24 A.L.R.3d 1065 (1967); *State v. Fitzsimmons,* 93 Wn.2d 436, 610 P.2d 893 (1980); *State v. Haynes,* 16 Wn. App. 778, 559 P.2d 583 (1977); *State v. Vargas,* 25 Wn. App. 809, 610 P.2d 1 (1980).

Reynolds testified for the State without objection that he was with Roberts when the padlock was cut and had secured the bolt cutter. He testified concerning the events of the burglary. The other occupants of the apartment, Mires and Fitzke, testified for the State that they were present when the burglary was planned and observed the bringing of the merchandise to the apartment. The evidence of the guilt of the defendant was overwhelming.

We have carefully read the entire record and can conclude that if the case was retried the position of the parties would be the same and that the jury would return a similar verdict. We can say with honest conviction beyond a reasonable doubt that the error was harmless.

The judgment is affirmed.

REED, C.J., and PETRIE, J., concur.