[No. 15836-8-I. Division One. September 8, 1986.]

THE STATE OF WASHINGTON, *Respondent*, v.
STEVEN WOOD, *Appellant*.

*substituted defendant must receive notice under rule 15(c) does not include the time available for service of process.*

*Mark W. Muenster* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dan Kinerk, Deputy,* for respondent.

RINGOLD, A.C.J.—Steven Wood appeals the judgment

and sentence imposed after the trial judge found him guilty of possession of marijuana in violation of RCW 69.50-.401(d). He claims that the trial court erred in failing to suppress certain evidence.

On January 10, 1984, at approximately 9:45 a.m. Seattle Police Officer James Carlton and King County Officer Benner went to a home in southwest Seattle to execute an arrest warrant on Louis Marker. Marker was a parole violator who was believed to be staying there. Upon arriving at the house, Carlton went to the front door while Benner went to the back. Carlton knocked on the door and saw through a window a person matching Marker's description head toward the back door. Carlton knocked again and Marker came to the front door. When Marker opened the door, Carlton asked him his name. Marker responded "I know why you're here and I'm ready to go."

Marker then turned and started back into the interior of the house. Carlton immediately followed him. In the living room Carlton saw a couple of roach clips and hashish pipes. He also smelled the odor of marijuana and saw a jar containing what he thought to be marijuana. About halfway through the house, Carlton heard Benner at the back door knocking loudly. Marker opened the back door for Benner who identified himself as a police officer.

Upon entering, Benner noticed "a very strong smell of what I recognized as the cultivation of marijuana." During these events, Steven Wood "appeared" in the kitchen. Upon request, Wood identified himself and Benner recognized the name from the information he had been given. Wood also indicated that he lived in the house.

Apparently, all four men then moved to the living room while Marker put on his shoes and prepared to go. Benner then saw a jar of what appeared to be marijuana and other assorted paraphernalia. Benner then said to Wood, "I know you have some marijuana growing upstairs [sic].[1] I would

---

[1] It is apparent from other parts of the record that the operation was downstairs, not upstairs.

like to take a look at it."

Wood led Benner to the basement where Benner discovered a marijuana growing operation. Benner testified that Wood volunteered information that the marijuana belonged to his roommate and him and was for their personal use. Upon returning upstairs, Benner informed Carlton of his observations and left with Marker.

Here the testimony conflicts. Wood testified that he was never read his *Miranda* rights. Carlton testified that he advised Wood of his rights. Carlton also stated that Wood again admitted that the growing operation was set up by him and his roommate for their personal use.

Wood was charged with possession of marijuana in violation of RCW 69.50.401(d). He moved to suppress the evidence found in his home and the statements he made to the police. Both motions were denied, and Wood agreed to a stipulation permitting the court to consider the case on the basis of the police reports that were made part of the record. The court entered an oral finding of guilt and ordered the sentence deferred for 3 years with various conditions of probation.

We first consider whether the officers violated the Fourth Amendment by entering Wood's home while executing the arrest warrant on Marker.

## Fourth Amendment[2]

After holding a CrR 3.5 hearing, the judge determined that the officers' entry into Wood's house was legal and the evidence found therein was admissible under the plain view doctrine. Under this doctrine a warrantless seizure of evidence is permissible if: (1) the officers have a prior justification for the intrusion; (2) they inadvertently discover incriminating evidence; and (3) they have immedi-

---

[2]U.S. Const. amend. 4 provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

ate knowledge that they have evidence before them. *State v. Daugherty,* 94 Wn.2d 263, 267, 616 P.2d 649 (1980), *cert. denied,* 450 U.S. 958 (1981); *State v. Burgess,* 43 Wn. App. 253, 259, 716 P.2d 948 (1986).

Wood concedes that the second and third requirements were met. He maintains, however, that the officers' initial entry into his home was unjustified. He argues that the officers entered without his consent in the absence of exigent circumstances in violation of *Steagald v. United States,* 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981). Recent Supreme Court decisions indicate that such an argument based upon the Fourth Amendment is without merit.

In *Payton v. New York,* 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371 (1980), the Supreme Court held that under the Fourth Amendment an arrest warrant carries with it the authority to enter a home in which the suspect lives when there is reason to believe he is inside. *Payton,* at 602–03.

The Court further explicated *Payton* when considering *Steagald.* In *Steagald,* the officers entered a home pursuant to an arrest warrant without ascertaining first whether the arrestee was inside. The arrestee was not found, but illegal drugs were discovered. *Steagald,* at 206. In determining that the search was illegal, the Court noted that:

> In sum, two distinct interests were implicated by the search at issue here—Ricky Lyons' interest in being free from an unreasonable seizure and petitioner's interest in being free from an unreasonable search of his home. Because the arrest warrant for Lyons addressed only the former interest, the search of petitioner's home was no more reasonable from petitioner's perspective than it would have been if conducted in the absence of any warrant. *Since warrantless searches of a home are impermissible absent consent or exigent circumstances,* we conclude that the instant search violated the Fourth Amendment.

(Italics ours.) *Steagald,* at 216. Thus, our query resolves itself to whether exigent circumstances existed in the case

sub judice.

Though not cited by either party, *Washington v. Chrisman,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982) appears to be the controlling authority. In *Washington v. Chrisman,* a police officer observed a Washington State University student leave a dormitory carrying a bottle of gin. Since RCW 66.44.270 prohibited possession of alcoholic beverages by persons under 21 and the student appeared underage, the officer stopped him and asked for identification. The student said his ID was in his dormitory room and asked if the officer would wait while he retrieved it. The officer indicated that under the circumstances he would have to accompany the student, who then replied, "Okay."

The officer remained in the open doorway of the dorm room and observed the student's roommate, Chrisman, placing a small box in the medicine cabinet. Chrisman appeared nervous at the sight of the officer. The officer noticed what he believed to be marijuana seeds and a hashish pipe. Both students were arrested. *Washington v. Chrisman,* at 3–4.

Chrisman sought to suppress the evidence obtained in his dorm room. In *State v. Chrisman,* 94 Wn.2d 711, 619 P.2d 971 (1980), our Supreme Court held that the search violated the Fourth Amendment. On appeal to the United States Supreme Court, the Court held that:

> The "plain view" exception to the Fourth Amendment warrant requirement permits a law enforcement officer to seize what clearly is incriminating evidence or contraband when it is discovered in a place where the officer has a right to be. Here, the officer had placed Overdahl under lawful arrest, and therefore was authorized to accompany him to his room for the purpose of obtaining identification. The officer had a right to remain literally at Overdahl's elbow at all times; nothing in the Fourth Amendment is to the contrary.
>
> . . .
>
> We hold, therefore, that it is not "unreasonable" under

the Fourth Amendment for a police officer, as a matter of routine, to monitor the movements of an arrested person, as his judgment dictates, following the arrest. The officer's need to ensure his own safety—as well as the integrity of the arrest—is compelling. Such surveillance is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested.

(Footnotes and citations omitted.) *Washington v. Chrisman, supra* at 5–7. In a footnote, the Court recognized that

Indeed, were the rule otherwise, it is doubtful that an arrested person would ever be permitted to return to his residence, no matter how legitimate the reason for doing so. Such a rule would impose far greater restrictions on the personal liberty of arrested individuals than those occasioned here.

*Washington v. Chrisman, supra* at 7 n.4.

Applying *Washington v. Chrisman* to the case sub judice leads to the conclusion that the Fourth Amendment was not violated. Unlike *Steagald,* the arrestee in this case, Marker, was identified and found within the house before the police entered. It is evident that from the moment Carlton had his initial contact with Marker, Marker was under arrest pursuant to the arrest warrant and Carlton had a right to stay "literally at [Marker's] elbow at all times". *Washington v. Chrisman, supra* at 6.

Relying on *Washington v. Chrisman,* the New Jersey Supreme Court has upheld actions similar to those taken by officers Carlton and Benner. In *State v. Bruzzese,* 94 N.J. 210, 463 A.2d 320 (1983), the police arrived at the defendant's home to execute an arrest warrant for contempt of court at approximately 10:30 a.m. The defendant's aunt, with whom he lived, answered the door. The police indicated that they wished to speak with her nephew and she allowed them to enter the house. She went upstairs to get him while the police remained downstairs. The defendant, clad only in a T–shirt and pants, came downstairs and was placed under arrest. He told the police he wanted to put on a jacket and shoes before he left. Without invitation,

the officers followed him upstairs to his bedroom. In the bedroom, evidence was observed that linked the defendant to a burglary. *Bruzzese,* 463 A.2d at 322–23.

In upholding the search as reasonable, the court noted:

The officers arrived at a reasonable hour at which it was likely that defendant would be dressed. It was the defendant himself who decided to go upstairs. Defendant could have requested his aunt to get his clothes. The police did not search any other room of the house. The police did not order or even suggest that defendant go upstairs to the bedroom or anywhere else in the house. Even after the police told the defendant they would have to accompany him, he could have declined to go upstairs or asked his aunt at that point to get his clothes. If defendant, partially clad, had elected to depart from his house with the police, the officers could not have entered his bedroom without a search warrant.

In sum, the policeman's act of following defendant upstairs was a reasonable consequence of defendant's own voluntary choice to go to his bedroom and get dressed. We conclude that Hicks's action in following the defendant upstairs was reasonable, and hence, constitutional . . .

*Bruzzese,* at 235.

The only salient factor that distinguishes *Bruzzese* from the case at bench is that Marker was arrested in Wood's home, not his own. It could be argued that since Marker had been staying there for 3 weeks, Wood's home was the functional equivalent of his own. Such an amorphous distinction need not be addressed here. The question of whether a search violates the Fourth Amendment is determined by focusing on the reasonableness of the search. *Kuehn v. Renton Sch. Dist. 403,* 103 Wn.2d 594, 694 P.2d 1078 (1985). The officer's actions in staying with Marker were reasonable under the circumstances. The officer should not have to ascertain whether the arrestee is in his own house for Fourth Amendment purposes before being allowed to stay in close proximity with him as permitted in *Washington v. Chrisman, supra.* The police should not be expected to make such subtle distinctions in the field.

## Article 1, Section 7[3]

While the Fourth Amendment provides only minimum protection of individual rights, state constitutions may afford greater protections. *E.g., State v. Chrisman,* 100 Wn.2d 814, 817, 676 P.2d 419 (1984) (*Chrisman* II). This is precisely what occurred in *Washington v. Chrisman, supra,* when the case was remanded to our Supreme Court from the United States Supreme Court. Accordingly, Wood's Const. art. 1, § 7 claim must be considered in light of *Chrisman* II.

 We have previously outlined the facts which distinguish *Chrisman* from the case sub judice. Analyzing *Chrisman* II under our state constitution, the court stated:

> We agree that concerns for safety present legitimate and often compelling reasons for an officer to keep an arrestee in custody. Concern for safety might also allow warrantless entries into a dwelling. Despite the legitimacy of this concern, unlike the federal court, we will not adopt a "bright line" or per se rule. Also, unlike the federal court, we place no importance in *Robinson,*[4] since we already rejected its reasoning in *Hehman.*[5] We will not find compelling reasons for full custodial arrests and warrantless entries in a vacuum. Rather, the use of these practices can only be permitted under state law when the officer possesses specific articulable facts justifying custody and/or entry into a private dwelling.

*Chrisman* II, at 820.

The court then concluded that while the officer was justified in accompanying the student upstairs to his dorm room, his entry into the room was unjustified. The court noted that the officer was not presented facts sufficient to demonstrate either (1) a threat to his safety, or (2) the pos-

---

[3]Const. art. 1, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

[4]*United States v. Robinson,* 414 U.S. 218, 38 L. Ed. 2d 427, 94 S. Ct. 467 (1973) (validated practice of placing persons under custodial arrest and accompanying search incident to arrest for minor traffic violation).

[5]*State v. Hehman,* 90 Wn.2d 45, 578 P.2d 527 (1978).

sibility of destruction of evidence, or (3) a strong likelihood of escape. *Chrisman II*, at 821. Accordingly, the court held, "In cases of minor violations, where no danger exists, and where there is no threat of destruction of the evidence, we can find no compelling need to enter a private residence." *Chrisman II*, at 822.

In Wood's case, it is conceded that neither destruction of evidence nor escape was of concern to the officers. Their sole purpose for accompanying Marker was expressed to be "security reasons." The question then is whether the officers possessed "specific articulable facts" to justify their entry into Wood's home when effecting the arrest warrant. *Chrisman II*, at 820. Under the facts of this case, it appears that they did.

In contrast to the situation in *Chrisman II*, the officers who entered Wood's house were not arresting someone for a misdemeanor without any indication of a prior criminal propensity. These officers were executing an arrest warrant on someone who had violated his parole.[6] As stated by Officer Carlton, "In any felony arrest such as that I believe that the person is armed until I can establish otherwise." Under the circumstances known to the officers at the time, this action was reasonable. *State v. Perez*, 41 Wn. App. 481, 486 n.3, 704 P.2d 625 (1985). As this court has recently stated: "An officer is not required to experience trembling fear or an overt threat as a prerequisite to *reasonable action* which protects his safety." *Perez*, at 486 (quoting *State v. Groth*, 144 Vt. 585, 590, 481 A.2d 26, 29 (1984)).

In *Chrisman II*, the court also noted that the officer involved was not threatened. In support of this conclusion, the court stated:

Indeed the fact that the officer did not initially accompany [the student] into the room shows the absence of any concern for safety or the integrity of the arrest. Even

---

[6]Though it would undoubtedly be useful to know what particular crime Marker had committed, *i.e.*, violent or nonviolent, the only indication in the record comes from Wood's testimony that "he (Marker) had gotten out of jail for not paying something . . ."

if we agreed with the United States Supreme Court's rule, we think the officer abandoned any claim of reasonableness by allowing Overdahl to enter alone. This abandonment supplies added evidence of the need to examine the facts of each case rather than relying upon per se or bright line rules.

*Chrisman* II, at 821.

Officer Carlton did not abandon his "claim of reasonableness" in this case. As soon as Marker turned and reentered the interior of the house, Carlton was close behind him. No evidence supports an inference that the officers were not fearful.

This case presents facts that under *Chrisman* II "present legitimate . . . reasons for an officer to keep an arrestee in custody" with a concern for safety sufficient to allow warrantless entries into a dwelling. *Chrisman* II, at 820. Const. art. 1, § 7 was not violated by the officers' entry into Wood's home. The evidence detected by the officers in plain view in the living room was clearly admissible.

## MIRANDA WARNINGS

 Once probable cause to arrest exists, any further interrogation becomes custodial and *Miranda*[7] rights must be given. *State v. Creach,* 77 Wn.2d 194, 198, 461 P.2d 329 (1969). The police cannot thereafter avoid *Miranda* by delaying arrest. *State v. Dictado,* 102 Wn.2d 277, 291, 687 P.2d 172 (1984); *State v. Lewis,* 32 Wn. App. 13, 18, 645 P.2d 722 (1982).

After the CrR 3.5 hearing the trial judge indicated that "probable cause for the arrest occurred when the defendant and Officer Benner returned upstairs after viewing the marijuana downstairs." On appeal, however, the State concedes that "[w]hen they (the officers) contacted appellant (Wood) and he stated he lived there, then probable cause to arrest him existed." This concession appears warranted in light of *State v. Dennis,* 16 Wn. App. 417, 422, 558 P.2d

---

[7]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

297 (1976) (police had probable cause to arrest defendant since they had reliable information that narcotics were sold in the apartment and defendant confirmed that he lived there). Accordingly, this concession is adopted by this court, despite the trial court's conclusions.

In light of the concession, Wood should have been given *Miranda* warnings when he first admitted being a resident of the house. The fact that the officers did not place Wood under arrest at that time does not absolve them of the duty to read the *Miranda* rights.[8] *State v. Dictado, supra* at 291. Any incriminating statements made by Wood as the result of interrogation should be suppressed.

Officer Benner's statement that he knew marijuana was growing in the house and that he would like to see it was directed at Wood. Officer Benner should have known that the statement was "reasonably likely to elicit an incriminating response" from Wood and was, therefore, the functional equivalent of interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 301, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). Wood's admission of ownership of the marijuana to Officer Benner should have been suppressed.

Likewise, the physical evidence of the downstairs growing operation should also have been suppressed. Wood disclosed this evidence to Officer Benner only after being interrogated without the benefit of *Miranda* warnings. Though the officers may have had the right to conduct a search incident to arrest, entry into the downstairs went beyond the scope of a lawful search. *State v. Roberts,* 31 Wn. App. 375, 380, 642 P.2d 762 (1982).

The physical evidence of the growing operation and Wood's admissions to Officer Benner should have been suppressed.

---

[8]There is some testimony in the record to the effect that Wood knew of his rights without being read the *Miranda* warnings. His own awareness of his rights cannot be used as a substitute for administering the warnings. *State v. Thomas,* 16 Wn. App. 1, 9, 553 P.2d 1357 (1976).

HARMLESS ERROR

The harmless error doctrine permits a conviction to stand even if it follows a denial of a defendant's constitutional right, if the appellate court can declare that the error was harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726 (1969); *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied*, 106 S. Ct. 1208 (1986); *State v. Roberts*, 31 Wn. App. 375, 380, 642 P.2d 762 (1982). The State contends that failure to give *Miranda* and the admission of the evidence of the growing operation does not effect the fact that Wood was in possession of the marijuana that was in plain view upstairs. Since Wood was convicted only of possession of marijuana, the State argues that legally admissible evidence supports the conviction.

Wood was convicted of a violation of RCW 69.50.401(d), which states in pertinent part:

> It is unlawful for any person to possess a controlled substance unless the substance was obtained directly from, or pursuant to, a valid prescription . . .

Guilty knowledge or intent are not elements of the crime. *State v. Cleppe*, 96 Wn.2d 373, 380, 635 P.2d 435 (1981), *cert. denied*, 456 U.S. 1006 (1982). Possession, actual or constructive, is the sole element to be proved to convict of the crime of possession under this statute. *Cleppe*, at 380; *see also State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969). Though the trial court entered no findings with regard to constructive possession, we affirm Wood's conviction on that basis for the following reasons.

Wood entered a stipulation permitting the court to consider the case on the basis of the police reports that were made part of the record. The stipulation was not tantamount to a confession of guilt, but was only an admission that, if called, the State's witnesses would testify in accordance with the police reports. *State v. Wiley*, 26 Wn. App. 422, 425, 613 P.2d 549 (1980). Since the evidence before the trial court was entirely documentary in nature, this court may review the evidence de novo. *Faucher v. Burlington*

*Northern, Inc.,* 24 Wn. App. 711, 712–13, 603 P.2d 844 (1979).

■ Constructive possession is established when the person charged has dominion and control over either the drug or the premises where the drug is found. *State v. Callahan, supra* at 29; *State v. Hystad,* 36 Wn. App. 42, 49, 671 P.2d 793 (1983). Such possession and control need not be exclusive, but may be inferred from such circumstances as payment of rent, or possession of keys. *State v. Davis,* 16 Wn. App. 657, 659, 558 P.2d 263 (1977).

Wood's own testimony and the stipulated evidence establish that Wood was one of the residents of the house. We find this evidence sufficient to conclude that Wood was in constructive possession of the contraband observed by the officers in plain view in the living room. *See State v. Rood,* 18 Wn. App. 740, 746, 573 P.2d 1325 (1977). Because Wood has not asserted that possession was unwitting, *State v. Cleppe, supra* at 381, we need not address that issue.

Accordingly, we affirm the judgment and the order deferring the sentence.

SWANSON and COLEMAN, JJ., concur.

Review denied by Supreme Court December 2, 1986.