FILED
COURT OF APPEALS
DIVISION II

2014 JUL -1 AM 8: 50

STATE OF WASHINGTON

BY _____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 44347-3-II |
| Respondent, | |
| v. | |
| ANGELA LEIGH BOHRER, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Angela Bohrer appeals her jury trial convictions for second degree burglary and possession of a stolen vehicle, following the burglary of Ivan and Latisha Ahquin's storage unit. Bohrer argues that (1) insufficient evidence supports her burglary conviction as a principal because the evidence does not show that she entered the Ahquins' unit, (2) insufficient evidence supports her burglary conviction as an accomplice because the evidence does not show that she aided Daniel Ripley's burglary of the Ahquins' unit, and (3) insufficient evidence supports her conviction for possession of a stolen vehicle as a principal because the evidence shows neither that she possessed the Ahquins' motorcycle, nor that she knowingly possessed that motorcycle with knowledge that it was stolen. Because sufficient evidence supports Bohrer's convictions, we affirm.[1]

---

[1] Bohrer also argues that insufficient evidence supports her conviction for possession of a stolen vehicle as an accomplice. We need not consider this argument because sufficient evidence supports her conviction as a principal. *See State v. McDonald*, 138 Wn.2d 680, 687-88, 981 P.2d 443 (1999).

## FACTS[2]

### A. *The Storage Facility*

A Storage Center was a storage facility that was completely enclosed by a natural perimeter and fencing. Tenants entered and exited the facility through a locked gate. Each tenant received his or her own unique personal identification number (PIN), used to unlock the gate at every entry and every exit. Each time a PIN was used to enter or exit, a PIN log recorded which PIN was entered, when the PIN was entered, whether the PIN successfully opened the gate, and whether that opening was for an entry or an exit. Each tenant provided their own padlock to secure their individual unit. Surveillance cameras were placed throughout the facility.

### B. *Tenants in the Facility*

One of the facility's buildings had two floors of storage units connected by a set of stairs and an elevator. The Ahquins rented a storage unit on the building's second floor. Angela Bohrer also rented a storage unit on the second floor, immediately adjacent to the Ahquins' unit. Bohrer's boyfriend, Ripley, rented a storage unit on the building's first floor.

The lease agreement allowed a tenant to authorize other people to access his or her unit. Ripley authorized Bohrer to access his unit by signing her name to the "authorized visitors" section of his lease of that unit.[3]

---

[2] Because Bohrer challenges only the sufficiency of the evidence, we write these facts in the light most favorable to the State. *See State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[3] Bohrer authorized Ripley to access her unit, later revoked this authority, but then reinstated Ripley's access to her unit.

Almost every time that Bohrer visited the facility she drove a red Ford Explorer registered in Bohrer's and Ripley's names. Ripley also drove the Explorer to the facility, but less often than Bohrer.

C.     *The Ahquins' Discovery of the Burglary*

On March 22, 2012, the Ahquins discovered that someone had replaced their unit's padlock with a new padlock. After a facility operator cut the new padlock, the Ahquins entered their unit and discovered that "[t]hings were broken. The beds were flipped over. Everything was torn out of boxes." 4 Verbatim Report of Proceedings at 130. A large amount of the Ahquins' property was missing, including their motorcycle and quad bike. Following the Ahquins' discovery of the burglary, the facility operators and the Ahquins examined the PIN log and surveillance video.

D.     *The PIN Log and Surveillance Video*

The PIN log showed that Bohrer and Ripley's unique PINs were used to repeatedly enter and exit the facility from between March 15 at 6:46 PM and March 16 at 11:17 AM. During this time range, Ripley's PIN was used five times to enter and five times to exit, while Bohrer's PIN was used two times to enter and four times to exit.

The surveillance video showed that on March 15 at 8:12 PM, the Explorer towed away the Ahquins' quad bike. The video showed that on March 16 at 9:50 AM, Bohrer transported two dollies loaded with property, including the Ahquins' suitcases and amplifier, into the building's elevator. The video showed that on March 16 at 10:58 AM, Bohrer transported a dolly loaded with property, including a pair of bolt cutters and the Ahquins' cooler, into the elevator.

E.    *The Searches of Bohrer's and Ripley's Units and the Explorer*

A facility operator cut the locks on Bohrer's and Ripley's units to allow the Ahquins to look inside Bohrer's and Ripley's units without entering them. The Ahquins discovered some of their property in both Bohrer's and Ripley's units. The Ahquins also discovered tracks from a quad bike going from their unit to Ripley's unit.

The police later searched Ripley's unit, Bohrer's unit, and the Explorer pursuant to search warrants. In Ripley's unit the police found a pair of bolt cutters and the Ahquins' motorcycle, motorcycle accessories, bicycle, tools, suitcases, fog machine, air tanks, barbeque, and speakers. In Bohrer's unit the police found another pair of bolt cutters and the Ahquins' fishing equipment, tools, tool case, and CD (compact disc) rack. In the Explorer the police found the Ahquins' paintball equipment, fishing pole, amplifiers, exercise equipment, and electronics.

F.    *Trial and Conviction*

The State charged Bohrer with second degree burglary. The State also charged Bohrer with possession of a stolen motor vehicle based on the Ahquins' stolen motorcycle found in Ripley's unit. The trial court instructed the jury on accomplice liability. The jury convicted Bohrer on both counts. Bohrer appeals.

## DISCUSSION

"A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Thus, we test the sufficiency of the evidence by asking whether, viewing the evidence and all reasonable inferences from that evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements beyond a reasonable doubt.

4

*Salinas*, 119 Wn.2d at 201. We defer to the trier of fact's decisions resolving which reasonable inferences to draw from the evidence. *State v. Bryant*, 89 Wn. App. 857, 869, 950 P.2d 1004 (1998); *see State v. Walton*, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992).

A defendant is liable as an accomplice if, with knowledge that it will promote or facilitate the crime, he or she either: (1) solicits, commands, encourages, or requests another person to commit the crime or (2) aids or agrees to aid another person in planning or committing the crime. RCW 9A.08.020(3)(a). The defendant must act with knowledge that he is facilitating the specific crime charged, not simply "a crime." *State v. Cronin*, 142 Wn.2d 568, 578-79, 14 P.3d 752 (2000). But an accomplice need not participate in the crime, have specific knowledge of every element of the crime, or share the same mental state as the principal. *State v. Berube*, 150 Wn.2d 498, 511, 79 P.3d 1144 (2003). Rather, an accomplice must merely act with the knowledge that he or she is either promoting or facilitating a particular crime. *Berube*, 150 Wn.2d at 511.

Criminal liability is the same whether one acts as a principal or as an accomplice. *State v. Silva-Baltazar*, 125 Wn.2d 472, 477, 886 P.2d 138 (1994). Accomplice liability is not an element or alternative means of committing a crime, but rather is an alternative theory of liability. *State v. Teal*, 152 Wn.2d 333, 338, 96 P.3d 974 (2004); *State v. Williams*, 28 Wn. App. 209, 213, 622 P.2d 885 (1981). "It is constitutionally permissible to charge a person as a principal and convict him as an accomplice, as long as the *court instructs* the jury on accomplice liability." *State v. Bobenhouse*, 143 Wn. App. 315, 324, 177 P.3d 209 (2008).

Where the court instructs the jury on accomplice liability, the jury can convict without reaching consensus on whether the defendant committed a crime as a principal or as an accomplice, as long as each juror can agree that the defendant committed the crime in at least one of those two ways. *State v. McDonald*, 138 Wn.2d 680, 690, 981 P.2d 443 (1999). Thus, the evidence is sufficient as long as it shows that the defendant must have committed the crime in at least one of those two ways.

Bohrer argues that insufficient evidence supports her burglary conviction as a principal and an accomplice, and that insufficient evidence supports her conviction for possession of a stolen vehicle as a principal. We hold that sufficient evidence supports both convictions.

## I. BURGLARY

Bohrer argues that insufficient evidence supports her burglary conviction because sufficient evidence supports neither that she entered the Ahquins' unit, nor that she aided Ripley's burglary of the Ahquins' unit. We disagree.

RCW 9A.52.030(1) defines second degree burglary:

A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling.

From between March 15 at 6:46 PM and March 16 at 11:17 AM, both Bohrer's and Ripley's PINs were used to repeatedly enter and exit the facility. On March 15 at 8:12 PM, the video showed the Explorer registered in Ripley's and Bohrer's names towing the Ahquins' quad bike. On the morning of March 16, the video showed Bohrer transporting three dollies into the building's elevator, each loaded with property, including the Ahquins' property. The Ahquins were missing a quad bike, and tracks from a quad bike went from the Ahquins' unit to Ripley's

unit. Numerous items of the Ahquins' property were found in Bohrer's unit, Ripley's unit, and the Explorer. Bolt cutters were found in both Bohrer's and Ripley's units.

This is sufficient evidence that Bohrer and Ripley, with criminal intent to steal property from the Ahquins' unit, worked together to unlawfully enter and steal property from the Ahquins' unit. At least one of them entered the Ahquins' unit to steal the property. Thus, the jury could reasonably infer that Bohrer either unlawfully entered the Ahquins' unit with intent to commit a crime against the Ahquins' property therein, or aided Ripley in unlawfully entering the Ahquins' unit with intent to commit a crime against the Ahquins' property therein (knowing that her acts would facilitate Ripley's burglary). The former establishes Bohrer's guilt as a principal, and the latter establishes her guilt as an accomplice. Because the evidence proves that at least one of these two theories must be true, it need not establish which is true. *See McDonald*, 138 Wn.2d at 690. Thus, sufficient evidence supports Bohrer's burglary conviction.

## II. POSSESSION OF A STOLEN VEHICLE

Bohrer argues that insufficient evidence supports her conviction for possession of a stolen vehicle as a principal because the evidence supports neither that she possessed the Ahquins' motorcycle found in Ripley's unit, nor that she knowingly possessed the motorcycle with knowledge that it was stolen. We disagree.

A.      *The Law of Possession of a Stolen Vehicle*

RCW 9A.56.068(1) defines possession of a stolen vehicle:

A person is guilty of possession of a stolen vehicle if he or she possess [possesses] a stolen motor vehicle.

(Alteration in original.) RCW 9A.56.140(1) defines what it means to "possess" stolen property:

"Possessing stolen property" means knowingly to receive, retain, possess, conceal, or dispose of stolen property knowing that it has been stolen and to withhold or appropriate the same to the use of any person other than the true owner or person entitled thereto.

Possession can be actual or constructive. A person has actual possession when he or she has physical custody of the item and constructive possession when he or she has dominion and control over the item. *State v. Jones*, 146 Wn.2d at 328, 333, 45 P.3d 1062 (2002). Dominion and control need not be exclusive; the State can establish it through circumstantial evidence. *State v. Wood*, 45 Wn. App. 299, 312, 725 P.2d 435 (1986). A person's leasing of a premises allows the trier of fact to reasonably infer that the person has dominion and control over that premises, which in turn allows the trier of fact to reasonably infer that the person has dominion and control over items within that premises. *See State v. Cantabrana*, 83 Wn. App. 204, 208, 921 P.2d 572 (1996); *State v. Davis* 16 Wn. App. 657, 659, 558 P.2d 263 (1977).

To prove that a defendant "possessed" stolen property, the State must prove that the defendant knowingly possessed property with knowledge that it was stolen. RCW 9A.56.140; *State v. Plank*, 46 Wn. App. 728, 731, 731 P.2d 1170 (1987). Mere possession of recently stolen property is insufficient to establish that the possessor knew the property was stolen. *See State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). But possession of recently stolen property, coupled with any other circumstantial evidence tending to show guilt sufficiently proves knowledge. *See Couet*, 71 Wn.2d at 775-76. The fact finder may reasonably infer knowledge if "a reasonable person would have knowledge under similar circumstances." *State v. Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999).

8

B.     *Application to Bohrer's Case*

Here, the police found the Ahquins' motorcycle in the unit leased by Ripley, and Ripley had authorized Bohrer's access to this unit by signing her name to the "authorized visitors" section of his lease. This evidence supports that Bohrer had equal access to the unit leased by Ripley, which allows the jury to reasonably infer that she, along with Ripley, had dominion and control over that unit. This in turn allows the jury to reasonably infer that Bohrer had dominion and control over the Ahquins' motorcycle found within that unit. Thus, sufficient evidence supports that Bohrer constructively possessed the motorcycle.

Both Bohrer's and Ripley's PINs were used to repeatedly enter and exit the facility. The facilities' surveillance video showed Bohrer at the building transporting the Ahquins' property and the Explorer towing away the Ahquins' quad bike. Numerous items of the Ahquins' property were found in Bohrer's unit, Ripley's unit, and the Explorer, and bolt cutters were found in both Bohrer's and Ripley's units. This evidence sufficiently supports that Bohrer worked with Ripley to enter and steal property from the Ahquins' unit, and that she was present at the crime scene.

A reasonable person under circumstances similar to Bohrer, i.e., a person who worked with a partner to enter and steal items from a storage unit and who was present at the crime scene, would know that property as large and as valuable as a motorcycle was stolen from that unit and that such property was placed in her constructive possession. Thus, the evidence allows the jury to reasonably infer that Bohrer knowingly possessed the Ahquins' motorcycle with

No. 44347-3-II

knowledge that it was stolen, making that evidence sufficient to support Bohrer's conviction for possession of a stolen vehicle.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Hunt, P.J.

Maxa, J.

10