FILED
COURT OF APPEALS
DIVISION II

2014 NOV 13 AM 9: 00

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45757-1-II |
| Respondent, | |
| v. | |
| LANE J. SMITH, | ·UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Lane J. Smith was convicted of second degree possession of stolen property[1] following a bench trial. Smith appeals his conviction arguing that the State did not present sufficient evidence to prove that he knowingly possessed or disposed of stolen property. Because sufficient evidence supports the conviction, we affirm.

## FACTS

Smith lived in a rental home with Teresa Dundom, Teresa's daughter Teri Dundom,[2] and Teri's boyfriend Jose Ayala. The rental home's garage was locked with a padlock. Smith and Teresa were the only two people with a key to the garage. The garage was considered off limits to others in the home, and no one was allowed inside the garage except for Smith and Teresa.

___

[1] *See* RCW 9A.56.160.

[2] For clarity, we refer to Teresa Dundom and Teri Dundom by their first names. We intend no disrespect.

On November 30, 2012, Smith received a text message from Robin Lavin, asking Smith to help Lavin move a trailer. Smith agreed to help Lavin. Smith towed the trailer with his pickup truck and stored the trailer in his garage.

On December 1, 2012, Deputies Ryan Tully and Ronald Davis of the Pacific County Sheriff's Office executed a search warrant, based on an unrelated case, at Smith's rental home. Teresa was the only person home at the time the warrant was executed. When the police searched the garage they noticed the trailer inside had a license plate that did not match the trailer's vehicle identification number. The license plate and the trailer were registered to two different people. The police seized the trailer and the items contained inside it. While searching the garage, the police also noticed and took pictures of several remote controlled model airplanes. The police did not seize the airplanes. When Smith returned home on December 1, he found a copy of the search warrant on his kitchen table with the list of items that were seized, including the trailer.

On December 3, the police returned to Smith's residence to arrest him on an unrelated outstanding warrant. On December 5, and after further investigation, the police contacted Bruce Graham and verified that the contents of the trailer and the model airplanes had been stolen from his residence while he was on vacation. The model airplanes were never recovered from Smith's garage or returned to Graham. The State charged Smith with first degree possession of stolen property[3] for possessing the contents of the trailer and second degree possession of stolen property for possessing the model airplanes.

---

[3]*See* RCW 9A.56.150.

Smith waived his right to a jury trial. At the bench trial, Deputy Davis testified that when he placed Smith under arrest for the warrant on December 3, Smith asked him "if that was all that he [was] being arrested for." Report of Proceedings (RP) (Oct. 17, 2013) at 30. Davis read Smith his *Miranda*[4] rights and took him to the South Bend Police Department. At the police department, Smith was again read his *Miranda* rights and initially agreed to talk to police.

The South Bend Chief of Police, David Eastham, was present while Davis questioned Smith at the police department. Davis noticed that Smith appeared to be "very nervous." RP (Oct. 17, 2013) at 41. Smith told Davis that he was the renter of the house and that the garage on the property was off limits to the other people living with him. Additionally, Smith told Davis that he was not the person who stole the items in the garage but that they were being stored there and he would talk to Davis about how the items got there. Smith also told police that he wanted to talk but he did not want to be known as a "snitch." RP (Oct. 17, 2013) at 43. Eastham testified that he overheard Smith say he did not want to be known as a "snitch" and that he "wasn't allowing people in or out of the garage." RP (Aug. 13, 2013) at 21. Smith then changed his mind and asked for an attorney, and at that point the questioning stopped. Davis testified that based on this conversation, he believed Smith knew that the items in his garage were stolen.

Davis also testified that, while at Smith's residence on December 3, Teri had told him that she saw Smith and Lavin use Smith's truck to pull the trailer up to the garage. Teri also told Davis that Smith said the garage was off limits after he and Lavin put the trailer in the garage. Teri additionally told Davis that she had seen Smith remove items from the garage after the police had seized the trailer on December 1.

---

[4]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

3

Smith testified that when he learned that the trailer had been seized by police, he became "angry" because at that point he knew if the police seized it, it had to have been stolen. RP (Oct. 17, 2013) at 84. Smith also testified that he did not want to give the police Lavin's name because he did not want to be known as a "snitch." RP (Oct. 17, 2013) at 91. Graham testified that the value of the model airplanes was well over $750. During its closing argument, the State argued that though the trailer had been returned to Graham, the model airplanes had been retained and disposed of by Smith.

The trial court found Smith not guilty of first degree possession of stolen property, but found Smith guilty of second degree possession of stolen property, regarding the model airplanes. The trial court entered findings of fact and conclusions of law, including:

> 9. After execution of the search warrant, the defendant was aware that the items brought to the residence were stolen: this included the model planes . . . . The defendant indicated to law enforcement on December 3, 2012 that he did not want to be a snitch by revealing that Mr. Lavin was the source of the stolen property. At trial the defendant indicated that the knowledge that the items were stolen began upon seeing the warrant return.
>
> 10. After execution of the search warrant, the defendant retained possession and disposed of the model airplanes. He did these acts on or about December 1, 2012 in Raymond, Washington.
>
> 11. The defendant did the acts described in paragraph 10 with the intention of depriving their true owner of his property.
>
> 12. The testimony of the State's witnesses was credible. The testimony of both South Bend Police Chief Eastham and Deputy Ron Davis of the Pacific County Sheriff's Office that the defendant knew the items were stolen, that he was very nervous when contacted on December 3, 2012, that he knew his arrest was for more than a warrant before law enforcement indicated so, and revealing the source of the property would make him a "snitch," as well as the testimony of Mr. Bruce Graham regarding the value of the stolen property were all particularly credible[.]

Suppl. CP at 23-24. Smith appeals.

No. 45757-1-II

## ANALYSIS

Smith challenges the sufficiency of the State's evidence supporting his conviction for second degree possession of stolen property. Specifically, Smith argues that the State "proffered insufficient evidence to prove that he knowingly possessed or disposed of stolen property or that he acted with knowledge that the property was stolen." Br. of App. at 11. Smith also argues that the evidence was insufficient to prove that he had exclusive dominion and control over the garage after the police served the search warrant. Smith challenges the trial court's findings of fact that (1) Smith was aware the model airplanes were stolen, (2) Smith did not want to reveal Lavin as the source of the stolen property, (3) Smith retained possession of the model airplanes and disposed of them, and (4) Smith had the intent of depriving the owner of his property.

### I. STANDARD OF REVIEW

When, as here, a trial court enters findings of facts and conclusions of law following a bench trial, we determine whether substantial evidence supports the findings, and if so, whether the findings support the conclusions of law. *State v. Stevenson*, 128 Wn. App. 179, 193, 114 P.3d 699 (2005). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the finding's truth. *Stevenson*, 128 Wn. App. at 193. We consider unchallenged findings of fact verities on appeal. *Stevenson*, 128 Wn. App. at 193. We review conclusions of law de novo. *Stevenson*, 128 Wn. App. at 193.

A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences drawn therefrom. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). All "reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Salinas*, 119 Wn.2d at 201. Circumstantial evidence and

5

direct evidence are deemed equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). We defer to the fact finder's resolution of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. O'Neal*, 126 Wn. App. 395, 424, 109 P.3d 429 (2005).

To convict Smith of second degree unlawful possession of stolen property, the State had to prove that Smith (1) knowingly possessed or disposed of stolen property, (2) acted with knowledge that the property had been stolen, (3) withheld or appropriated the property to the use of someone other than the true owner, and (4) that the stolen property exceeded $750 in value. RCW 9A.56.140(1); RCW 9A.56.160(1)(a).

## II. FINDINGS OF FACT

Smith argues that insufficient evidence supports the trial court's findings of fact. We disagree. The trial court found the testimony of the State's witnesses credible and that testimony provides substantial evidence supporting the trial court's findings of fact.

Smith argues that the trial court failed to find that he had exclusive dominion and control over the garage, and as such, someone else could have accessed the garage. The trial court's finding of fact 6 states that Smith did have dominion and control over the garage and there is substantial evidence to support this finding. Deputy Davis testified that Smith said the garage was off limits to the other people living with him. Chief Eastham also testified that Smith said that he was not allowing people in or out of the garage. This testimony provides substantial evidence sufficient to support the trial court's finding that Smith had dominion and control over the garage for the purpose of possession. And, contrary to Smith's apparent assertion, dominion and control does not need to be exclusive to support a finding of constructive possession. *State*

v. *Chavez*, 138 Wn. App. 29, 34-35, 156 P.3d 246 (2007) (citing *State v. Weiss*, 73 Wn.2d 372, 375, 438 P.2d 610 (1968)); *State v. Wood*, 45 Wn. App. 299, 312, 725 P.2d 435 (1986)).

Smith argues the evidence was insufficient to prove that he knew the model airplanes were in the garage. Smith does not challenge the trial court's finding that he did possess the model airplanes in his garage on December 1. The police left the model airplanes in the garage after seizing the trailer on December 1, and Davis testified that Teri told him Smith had gone into the garage at that time. A reasonable inference can be made that Smith knew the model airplanes were in the garage because he went inside the garage while the model airplanes were also inside.

Smith challenges the trial court's finding that he knew the model airplanes in the garage were stolen. Davis testified that Smith indicated to him that Smith knew the items being stored in his garage were stolen. Davis also testified that Smith told him that he was not the person "who stole the items but they were being stored in his garage." RP (Oct. 17, 2013) at 33. Because the trial court found the testimony of Davis credible, particularly the testimony that Smith knew the items in his garage were stolen, a reasonable inference can be made that Smith knew that the model airplanes were stolen.

Smith challenges the trial court's finding that he retained possession and disposed of the model airplanes after December 1. Again, Davis testified that he left the model airplanes in the garage when the police seized the trailer. Davis also testified that Teri told him she saw Smith removing items from the garage after the police seized the trailer. A reasonable inference can be made that Smith retained possession of the model airplanes when the police left them in the garage after seizing the trailer. A reasonable inference can also be made that Smith disposed of

the model airplanes when Teri saw him taking items out of the garage the same day the trailer was seized.

Smith also challenges the trial court's finding that he knowingly possessed the model airplanes with the intent to deprive the true owner of his property. As stated above, it can be reasonably inferred that Smith retained possession of the model airplanes in the garage, that he knew they were stolen, and that he disposed of them. In light of these inferences, it is also reasonable to infer that Smith committed those acts with the intent to deprive the true owner of his property.

### III. Conclusions of Law

The findings of fact support the trial court's conclusions of law that Smith (1) wrongfully possessed and disposed of stolen property, (2) knew that property to be stolen, and (3) intended to deprive the true owner of possession of that property.

Finding of fact 10, supported by substantial evidence, states that Smith retained possession and disposed of the model airplanes. This finding supports the conclusion that Smith wrongfully possessed and disposed of stolen property. Findings of fact 9 and 12, supported by substantial evidence, state that Smith was aware that the items brought to the garage were stolen, including the model airplanes, and that the State's testimony was credible, particularly the testimony of Davis, stating that Smith knew the items were stolen. These findings support the conclusion that Smith knew the model airplanes were stolen. Finding of fact 11, supported by substantial evidence, states that Smith possessed and disposed of the model airplanes with the intent of depriving their true owner of his property. This finding supports the conclusion that Smith intended to deprive the true owner of his property.

No. 45757-1-II

Substantial evidence supports the trial court's findings of fact and the findings of fact support the conclusion that Smith is guilty of second degree possession of stolen property. Therefore, sufficient evidence supports Smith's conviction. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Maxa, J.

_____
Lee, J.

9