[No. 8484-8-II.   Division Two.   July 28, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. RAYMOND C. WEST, *Appellant.*

*Steven R. Johnson* and *Johnson, Heard & Shearer,* for

appellant (appointed counsel for appeal).

*Michael G. Spencer, Prosecuting Attorney,* and *Gerald R. Fuller, Deputy,* for respondent.

LODGE, J.*—Raymond West appeals from his conviction of theft in the second degree, claiming that the testimony of witnesses for the State was tainted because they were identified from information that he gave before being advised of his *Miranda* rights. The trial court concluded that the live-witness testimony was sufficiently attenuated from the taint to allow its use against West. We agree and affirm.

The driver of a Grays Harbor County Transit bus reported the theft of her wallet to the Aberdeen Police Department on June 25, 1984. The wallet contained over $600 and had been left in the rear of the bus. She gave the police a general description of two young men who had been in the rear of the bus. The investigation of the theft by Detective Jenny of the Aberdeen Police Department stopped on July 16. On July 12, Officer Brookshire of the Montesano Police Department received information from a citizen that Raymond West had said that he found a wallet containing $600 on a Grays Harbor bus and that he had purchased a car with part of the money. Brookshire took a voluntary statement from West, but failed to advise him of his *Miranda* rights. The parties have stipulated that West's statements are inadmissible. West told Brookshire that Charles Depoe was with him when he took the wallet, that they divided up the money, and that he purchased a 1972 AMC Gremlin for $420 in Aberdeen.

West's statement was forwarded to Detective Jenny, who contacted Depoe. He advised Depoe of his *Miranda* rights and took a statement from him that implicated both him and West. With Depoe's help, Jenny was able to establish that West had purchased the Gremlin at Rogers Auto Sales

---

*This appeal was heard by a Supreme Court Justice and two Superior Court Judges sitting as Court of Appeals Judges Pro Tempore in Division Two.

in Hoquiam. Jenny took a statement from the dealership's owner, Jim Rogers, after advising him of his *Miranda* rights, and obtained a copy of the purchase agreement for the car. West was charged with theft in the second degree. He moved to suppress the testimony of Depoe and Rogers, claiming that their testimony was the fruit of his inadmissible statement to Brookshire. The court entered findings of fact and conclusions of law, denying the motion. Depoe and Rogers testified at trial. West was convicted by a jury of theft in the second degree.

West contends that the court's refusal to suppress the testimony of Depoe and Rogers was improper because their testimony was tainted by Brookshire's improper questioning. The State responds that the statements given by Depoe and Rogers were made after they were advised of their *Miranda* rights, so their testimony was sufficiently attenuated from the improper questioning to dissipate that taint. The State has the burden of showing sufficient attenuation from police misconduct to dissipate its taint. *State v. Childress*, 35 Wn. App. 314, 316, 666 P.2d 941, *review denied*, 100 Wn.2d 1031 (1983). The relevant factors for determining whether the testimony is sufficiently attenuated are:

> (1) the length of the 'road' between the unlawful conduct of the police and the witness' testimony; (2) the degree of free will exercised by the witness; and (3) the fact that exclusion would permanently disable the witness from testifying about relevant and material facts, regardless of how unrelated such testimony might be to the purpose of the original illegal search or the evidence discovered thereby.

*State v. Childress*, 35 Wn. App. at 316, citing *United States v. Ceccolini*, 435 U.S. 268, 275–77, 55 L. Ed. 2d 268, 98 S. Ct. 1054 (1978).

In applying the first *Ceccolini* factor, the "road" between the police misconduct and the witnesses' testimony is short and direct, as West's statement led to the discovery of Depoe and Rogers. This factor does not support attenua-

tion of the taint. Similarly, the third *Ceccolini* factor of considering whether the witness would be disabled from testifying to unrelated incidents does not support attenuation. All of Depoe's and Rogers' testimony was related to the incident West was charged with.

However, the second factor of *Ceccolini,* the degree of free will exercised by the witnesses, supports the conclusion that the testimony was sufficiently attenuated. Both Depoe and Rogers were advised of their *Miranda* rights and elected to make their statements and to testify at trial. The court found that their statements were freely and voluntarily given. West assigns error to those findings, claiming that the record contains no evidence supporting them. However, the record contains Detective Jenny's statements that he obtained the statements freely and voluntarily after advising Depoe and Rogers of their rights. West asserts that Depoe was an accomplice to the crime, and therefore could not exercise free will in testifying. Depoe had been charged with theft in connection with the incident and had pleaded guilty when he testified at trial. There is no indication that his statement, which implicated both West and himself, was not the product of free will. Further, there is no indication that Rogers did not exercise free will in giving his statement.

The question then is whether this one factor is sufficient to support the conclusion of attenuation. The *Ceccolini* Court concluded that

> the exclusionary rule should be invoked with much greater reluctance where the claim is based on a causal relationship between a constitutional violation and the discovery of a live witness than when a similar claim is advanced to support suppression of an inanimate object.

*Ceccolini,* 435 U.S. at 280. In applying the *Ceccolini* factors to the live testimony of witnesses identified through unconstitutional means, the federal courts have placed the greatest weight on evaluating whether the testimony was coerced or induced by the tainted information. *See United States v. Kandik,* 633 F.2d 1334, 1336 (9th Cir. 1980); *United*

*States v. Mergist,* 738 F.2d 645, 648 (5th Cir. 1984). *Cf. Hamilton v. Nix,* 781 F.2d 619, 625–26 (8th Cir. 1985).

The Ninth Circuit Court of Appeals has presented four additional factors to be considered in determining whether a sufficient attenuation between police misconduct and live–witness testimony exists. Those factors are:

> (1) the stated willingness of the witness to testify; (2) the role played by the illegally–seized evidence in gaining the witness' cooperation; (3) the proximity between the illegal behavior, the witness' decision to cooperate and the actual testimony at trial; and (4) the police motivation in conducting the search.

*United States v. Hooton,* 662 F.2d 628, 632 (9th Cir. 1981) (citing *United States v. Leonardi,* 623 F.2d 746, 752 (2d Cir.), *cert. denied,* 447 U.S. 928, 65 L. Ed. 2d 1123, 100 S. Ct. 3027 (1980)), *cert. denied,* 455 U.S. 1004, 71 L. Ed. 2d 873, 102 S. Ct. 1640 (1982).

In this case, both witnesses willingly gave statements and testified after being advised of their *Miranda* rights. The illegally obtained information does not appear to have had any role in gaining the witnesses' cooperation, although the events were proximate in time. Finally, there is no indication in the record that Officer Brookshire had any improper motive in questioning West before advising him of his rights. After applying these factors and considering the absence of coercion of the witnesses' testimony, we conclude that the court was correct in concluding that the testimony was sufficiently attenuated from the taint of the improper questioning.

The admissibility of the testimony is further supported by *Michigan v. Tucker,* 417 U.S. 433, 41 L. Ed. 2d 182, 94 S. Ct. 2357 (1974). The Court held that because it was dealing with "the testimony of a witness whom the police discovered as a result of respondent's [Tucker's] statements. This recourse to respondent's voluntary statements does no violence to such elements of the adversary system . . ." *Michigan v. Tucker,* 417 U.S. at 450. We conclude that the same can be said for the use of the information

that West gave to Brookshire.

Affirmed.

HEALY and UTTER, JJ. Pro Tem., concur.