[No. 7922-8-III. Division Three. December 8, 1987.]

THE STATE OF WASHINGTON, *Appellant*, v. SCOTT McKINNEY, ET AL, *Respondents*.

*Gary A. Riesen, Prosecuting Attorney,* and *Mark Davis, Deputy,* for appellant.

*Jeffrey Barker* (appointed counsel for appeal), *Kathleen Schmidt,* and *Scott, Cordell & Schmidt,* for respondents.

THOMPSON, J.—The trial court suppressed the evidence and dismissed all charges against Scott McKinney and Terry McGraw. The State appeals. We reverse.

On March 17, 1986, three Wenatchee detectives went to an apartment building to question a man about a stolen microwave oven. The building had two stories, with apartments on both floors. The detectives knocked at the downstairs apartment and, after getting no answer, started to leave. A girl emerged and told the detectives they might find the person they were looking for in one of the upstairs apartments.

The detectives, going upstairs, heard music or voices coming from one of two apartments on the second floor. They knocked on the door of the apartment from which the noise was emanating and a man, later identified as Terry McGraw, opened it. Detective Tangen asked whether the person they were looking for was there, to which question Mr. McGraw replied "no". One of the officers then asked what his name was. He replied, "Rod McGraw". Detective Sorenson then recognized the man as Terry McGraw, whom he had stopped in July 1985 for driving with a suspended license. At the July encounter, Mr. McGraw had fled the scene, and an arrest warrant for the traffic offense had been issued. Detective Sorenson said, "You're Terry McGraw, we have a warrant for you." Mr. McGraw immediately started to close the door, and Detectives Sorenson and Tangen pushed it open, entered the apartment, and took Mr. McGraw into custody. They then had a clear view through the kitchen into the living room, where they could see what they perceived to be contraband: a water pipe commonly used for smoking marijuana and a rolled up baggie.

*Miranda* warnings were given, and then Mr. McGraw was

asked whether the apartment was his. He replied it was not, that it belonged to a friend, and he was just a visitor. He also was asked whether anyone else was in the apartment. He replied there was someone in a wheelchair. He admitted some of the marijuana was his. Detective Pippin stepped into the apartment at that point, observed the contraband, and began to "sweep" the apartment for other occupants, in order to secure the premises. Additional marijuana was seen in plain view. An individual sitting on the couch was questioned. Detective Pippin kicked through a pile of sleeping bags behind the couch, thinking it might conceal a person, and found more marijuana in a Tupperware–type container.

Thereafter, Scott McKinney and several other persons arrived at the apartment. Mr. McKinney sat on the couch for a time, and then assisted the disabled person on the couch down to his car. When he returned, he was advised of his *Miranda* rights, and consented to a search of the apartment. However, by that time all of the marijuana had been located and some was sitting on the coffee table in front of Mr. McKinney.[1] Mr. McKinney and Mr. McGraw were arrested and charged with possession of a controlled substance with intent to distribute.

A suppression hearing was held on Mr. McKinney's motion; Mr. McGraw did not attend. The trial court suppressed all evidence seized and statements made. The court concluded that unless the officers could demonstrate a threat to safety, a threat of destruction of evidence, or a strong likelihood of escape, a search warrant was required for entering Mr. McKinney's premises to arrest Mr. McGraw. Since no exigent circumstances were shown, and

---

[1]The State has argued Mr. McKinney's consent waived any constitutional search warrant requirements, and that his consent was effective as to Mr. McGraw as well under the "common authority" consent rule of *United States v. Matlock,* 415 U.S. 164, 170, 39 L. Ed. 2d 242, 94 S. Ct. 988 (1974). Consent, however, does not cure or waive *prior* illegality. *State v. Bean,* 89 Wn.2d 467, 473, 572 P.2d 1102 (1978). No issue is presented as to whether the consent "sanitized" any subsequently seized items.

no search warrant obtained, the court concluded the first requirement for the plain view doctrine, prior justification for the entry, was not met. The court's conclusion was based on state constitutional law. Later, another suppression order was entered as to Terry McGraw.

■ The first issue raised by the State is whether, under the Fourth Amendment, Mr. McGraw has standing to object to the police entry of Mr. McKinney's residence. Although *Steagald v. United States,* 451 U.S. 204, 68 L. Ed. 2d 38, 101 S. Ct. 1642 (1981) requires that police officers obtain a search warrant before entering the home of a third party to search for the arrestee, even if they possess a valid arrest warrant, federal courts have held the *arrestee* cannot object, at least where police have a valid arrest warrant; the *Steagald* search warrant requirement only applies to the homeowner and is a personal right which cannot be vicariously asserted by the arrestee, absent a legitimate expectation of privacy in the premises searched. *Steagald,* 451 U.S. at 218–19; *United States v. Salvucci,* 448 U.S. 83, 85, 65 L. Ed. 2d 619, 100 S. Ct. 2547 (1980); *United States v. Underwood,* 717 F.2d 482 (9th Cir. 1983); *United States v. Buckner,* 717 F.2d 297 (6th Cir. 1983); *United States v. Clifford,* 664 F.2d 1090 (8th Cir. 1981). The State here concedes Mr. McKinney may object to the entry under *Steagald,* but argues under the Fourth Amendment Mr. McGraw may not because he was only a guest and the arrest warrant sufficed to protect his constitutional rights. Based on the federal authorities previously cited, this is correct.

■ Mr. McGraw appears to concede this by not arguing *Steagald,* but asserts in reply the police failed to comply with the statutory service of warrant requirement, RCW 10.31.030 and the knock and announce rule, RCW 10.31-.040. Thus, he reasons, the State cannot rely on the plain view exception because there was no lawful prior justification for entry. Aside from the fact that neither statutory argument was presented to the trial court and thus need not be reviewed, the State correctly points out the police officers substantially complied with service of warrant

requirements, *State v. Simmons,* 35 Wn. App. 421, 667 P.2d 133 (1983). Compliance with the knock and announce requirement would have been a "useless gesture" because Mr. McGraw knew who the detectives were and why they wanted to arrest him. *See State v. Coyle,* 95 Wn.2d 1, 11, 621 P.2d 1256 (1980); *State v. McIntyre,* 39 Wn. App. 1, 6, 691 P.2d 587 (1984). Thus, Mr. McGraw may not object to the police entry.

■ The second issue is whether Mr. McKinney's Fourth Amendment rights were violated in that the police did not have a search warrant when they entered his apartment. *State v. Wood,* 45 Wn. App. 299, 725 P.2d 435 (1986) involved a similar situation. In *Wood,* police, armed with a felony arrest warrant, went to Woods' home to arrest Louis Marker. Upon answering the door, Marker was asked his name to which he responded, "'I know why you're here and I'm ready to go.'" *Wood,* at 301. He then turned and started back into the house. Police followed and discovered evidence in plain view. The court first distinguished *Steagald* because there, police were *searching* for the suspect whereas in *Wood,* Marker was identified and found within the house before the police entered. Such was the case here, as well.

*Wood* also held because Marker was under arrest upon contact, based on the arrest warrant, police had a right to stay at his elbow and enter the home under *Washington v. Chrisman,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982). This is also controlling here. Under the Fourth Amendment, as applied to Mr. McKinney, police had lawful prior justification for being in the home and the State could rely on the plain view exception with regard to the evidence inadvertently discovered in Mr. McKinney's home.

The final issue is whether the trial court was correct in finding police entry violated the stricter mandates of article 1, section 7 of the Washington State Constitution. Although the State argues vigorously that independent state constitutional analysis is inappropriate here, citing the six factors

discussed in *State v. Gunwall*, 106 Wn.2d 54, 61–63, 720 P.2d 808 (1986), it appears settled that our courts will analyze police entry into private dwellings under article 1, section 7, and apply different standards than Fourth Amendment cases under the federal constitution. *See State v. Chrisman*, 100 Wn.2d 814, 676 P.2d 419 (1984) (*Chrisman* II); *State v. Wood, supra* at 305; *State v. Nelson*, 47 Wn. App. 157, 160, 734 P.2d 516 (1987).

■ First, there is no question Mr. McKinney may object to entry of his home, but we must decide whether Mr. McGraw had standing to object. Where possession is an essential element of the crime charged, and the defendant was in possession of the contraband at the time of the contested search or seizure, he has "automatic standing" to challenge the reasonableness of police actions under article 1, section 7 of the state constitution. *State v. Simpson*, 95 Wn.2d 170, 622 P.2d 1199 (1980). Here, Mr. McGraw was charged with unlawful possession of a controlled substance with intent to deliver and was in possession at the time of entry and seizure of the contraband. He may assert the illegality of police entry.

■ We next turn to the question whether the police officers were justified in entering a private residence after announcing their intent to arrest Mr. McGraw based on a misdemeanor arrest warrant. In *Chrisman* II, the issue was whether under state constitutional law officers may legitimately enter a private residence after making a warrantless arrest of an individual for a minor offense. Although in *Chrisman* II the arrestee's own residence was entered, and here Mr. McGraw was arrested in Mr. McKinney's home, the analysis is the same. Both Mr. McGraw and Mr. McKinney had legitimate state constitutional privacy interests at stake. *Chrisman* II stated:

> We will not find compelling reasons for full custodial arrests and warrantless entries in a vacuum. Rather, the use of these practices can only be permitted under state law when the officer possesses specific articulable facts justifying custody and/or entry into a private dwelling.

*Chrisman* II, at 820. Subsequent cases have applied the *Chrisman* II analysis to situations involving entry of private dwellings where, unlike *Chrisman* II, officers had an arrest warrant at the time of arrest. *State v. Nelson, supra; State v. Wood, supra.*

The result here must be different than in *Chrisman* II. While we note *Chrisman* II's requirement there be strong justification for entering a private residence in cases of minor violations, *Chrisman* II, at 822, we find such justification in this case.[2]

The arrest warrant was issued for driving while his license was suspended only after Mr. McGraw fled from custody. He had already demonstrated his propensity to escape prior to attempting to close the door on the officers here. Thus, on its facts this case is distinguishable from *Chrisman* II where the arrest was warrantless, and where the officer allowed the arrestee to enter his room unaccompanied, thus evidencing no reasonable concern for "safety or the integrity of the arrest". *Chrisman* II, at 821. Here, the officers had an arrest warrant and, although the warrant was for a minor offense, the prior escape increased the officer's legitimate concerns. The integrity of the arrest was threatened. Mr. McGraw, while in the officer's presence, was told he was under arrest. By closing the door, he was obviously attempting to prevent being taken into custody. We hold it was reasonable for the officers to take the action they did.

In addition, this situation is analogous to cases in which courts have allowed warrantless entry of dwellings under the hot pursuit exception. *See United States v. Santana,* 427 U.S. 38, 49 L. Ed. 2d 300, 96 S. Ct. 2406 (1976); *State v. Howard,* 373 N.W.2d 596, 599 (Minn. 1985); *see generally* 2 W. LaFave, *Search and Seizure* § 6.1(e) (2d ed.

---

[2]This case also is distinguishable from our recent decision in *State v. Ramirez,* 49 Wn. App. 814, 746 P.2d 344 (1987). The officers in *Ramirez,* unlike here, had no arrest warrant, nor were they faced with an arrestee seeking to thwart a valid arrest. While the "bright line" at the home's threshold could not be crossed in *Ramirez,* it was properly crossed here.

1987). Although it is true the officers could have secured the building to prevent escape, and courts have noted a mere possibility of escape is not sufficient under the fleeing suspect exigency, *see State v. Coyle, supra* at 9; *State v. Dresker,* 39 Wn. App. 136, 141, 692 P.2d 846 (1984), the addition of an arrest warrant, and the knowledge Mr. McGraw had a propensity to escape, provided the necessary added justification for swift action. Thus, the entry was lawful.

Because the officers had prior lawful justification for their intrusion, the contraband inadvertently observed, and immediately recognizable, is admissible under the plain view exception, *State v. Chrisman,* 94 Wn.2d 711, 715, 619 P.2d 971 (1980), *rev'd on other grounds,* 455 U.S. 1, 70 L. Ed. 2d 778, 102 S. Ct. 812 (1982), *adhered to on remand,* 100 Wn.2d 814, 676 P.2d 419 (1984). However, we note the marijuana discovered in the pile of sleeping bags does not appear to have been in plain view, and the officer's action in kicking through the blankets would not be included within the prior justification for entry. On remand, the trial court should consider what contraband is admissible under the plain view exception to the search warrant requirement.

We reverse, and reinstate the State's case against both Mr. McKinney and Mr. McGraw.

MCINTURFF, C.J., and GREEN, J., concur.

Reconsideration denied January 12, 1988.