[Nos. 9506–1–III; 9485–5–III. Division Three. December 7, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT BRIAN
STONE, *Appellant.*

*Paul Burns,* for appellant (appointed counsel for appeal).

*Donald C. Brockett, Prosecuting Attorney,* and *James Sweetser, Deputy,* for respondent.

MUNSON, A.C.J.—Robert Stone appeals his conviction on three counts of second degree burglary, contending the affidavits in support of two search warrants contained impermissible hearsay and were factually insufficient, and evidence obtained during the searches should have been suppressed. In a second case, he appeals his conviction on two counts of second degree burglary, contending the trial court erred in admitting into evidence testimony obtained from his interrogation without prior advisement of *Miranda* rights. The cases have been consolidated on appeal. We affirm the convictions in both cases.

I

Michael Kusterer, a Spokane police officer, returned home from work at 5 p.m. on December 8, 1987, and discovered his home had been burglarized. He promptly called the police. In the course of investigating the Kusterer burglary, Officer William Grub sought a search warrant to obtain the name and address of the telephone subscriber having a particular unlisted telephone number. The supporting affidavit set forth the following facts: a residential

burglary occurred about 3 p.m. on December 8, 1987; at that time another Spokane police officer observed a dark blue-on-black Ford Mustang with a red fender parked near the residence; some unidentified person or persons later observed this vehicle and obtained its license plate number; the number belonged to a 1970 Ford Mustang owned by Robert B. Stone, E. 7915 Liberty, Spokane; a police officer telephoned this address and spoke with an unidentified female who told him Robert Stone was not there, but could be reached at another telephone number; this number proved to be unlisted. A Spokane County District Court judge issued the search warrant authorizing a search of the telephone company's records to obtain an address for the unlisted number.

After executing the search warrant and learning the address, Detective David Madsen sought a second search warrant based upon his affidavit, stating: the burglary occurred at the Kusterer residence; jewelry and cash were among the items taken; neighbors Theron and Marsha Johnson, as well as police officer Al Odenthal, observed the dark Ford Mustang parked by the residence on the day of the burglary; two named county road department employees observed the Ford Mustang and reported its license number; county licensing reported that vehicle was sold to Robert B. Stone; records obtained under the earlier search warrant showed the telephone number where Mr. Stone could be reached belonged to Ronald Grace of W. 1318 Nora, Spokane; Officer Odenthal had observed Mr. Stone's vehicle at the Nora address and confirmed it was the same vehicle he had seen at the Kusterer residence; Mr. Stone was seen leaving the Nora address and was subsequently arrested for a traffic offense on December 11; arresting officers saw women's jewelry in Mr. Stone's vehicle; the affiant had previously arrested Mr. Stone for burglary and was aware of his prior burglary convictions. The second warrant was then issued for the search of the Nora residence, the Ford Mustang, and Mr. Stone's person.

Items seized in that search were subsequently identified by Mrs. Kusterer and two other individuals, Mildred Bell and Bonnie Brown, as having been taken during burglaries of their respective homes. Mr. Stone was convicted of all three burglaries.

Mr. Stone first contends the affidavit in support of the search warrant authorizing police to obtain the address of an unlisted number was insufficient because it failed to include facts showing the reliability and credibility of unidentified individuals who provided the information.

█ An affidavit based on information from a citizen informant must set forth facts from which a magistrate can independently determine both the reliability of the manner in which the informant acquired information and the credibility of the informant himself. *State v. Jackson,* 102 Wn.2d 432, 688 P.2d 136 (1984). When a citizen provides information which is nonaccusatory, does not describe criminal activity, and the nature of the information strongly suggests he is relating personal observation, demonstration of credibility and reliability is not required. *United States v. Melvin,* 596 F.2d 492 (1st Cir.), *cert. denied,* 444 U.S. 837 (1979).

The citizens who supplied police officers with the license plate number of a dark Ford Mustang were not describing criminal activity, and the fact supplied was one which the issuing magistrate could readily infer was obtained from personal observation. This inference is buttressed by the fact the license number they provided indeed turned out to belong to a Ford Mustang. A forwarding telephone number for Mr. Stone was similarly nonaccusatory, and the magistrate could infer the woman who supplied the number spoke from personal knowledge.

The facts provided by citizens were not informant tips, but nonaccusatory information. Failure to establish these citizens' reliability and credibility did not preclude the magistrate from finding probable cause, based on facts they supplied, to issue the requested warrant.

Were we to find the affidavit supporting the telephone records search warrant was defective, the State contends Mr. Stone lacks standing to challenge the warrant's legality. A claimed violation of rights, protected by the Fourth Amendment and by Const. art. 1, § 7, must rest on a defendant's legitimate expectation of privacy in the area searched or the property seized. *State v. White,* 97 Wn.2d 92, 110 n.9, 640 P.2d 1061 (1982); *State v. White,* 40 Wn. App. 490, 494, 699 P.2d 239, *review denied,* 104 Wn.2d 1004 (1985). An individual's privacy interest in his unpublished telephone listing is constitutionally protected because his expectation of privacy is demonstrated by his specific request that the information not be published. *State v. Butterworth,* 48 Wn. App. 152, 737 P.2d 1297, *review denied,* 109 Wn.2d 1004 (1987). A guest in another person's home, however, may not assert the privacy interest which is personal to the homeowner. *State v. McKinney,* 49 Wn. App. 850, 746 P.2d 835 (1987). Since Mr. Stone was Mr. Grace's guest, he had no legitimate expectation of privacy in Mr. Grace's unpublished telephone listing, and therefore no basis for claiming that search violated his rights.

Furthermore, under article 1, section 7 of the Washington State Constitution, a defendant has "automatic standing" to challenge a search or seizure if charged with an offense which includes possession as an essential element and if he was in possession of the seized property at the time of the challenged search. *State v. White,* 40 Wn. App. at 495. Mr. Stone was charged with second degree burglary under RCW 9A.52.030. Possession is not an element of burglary. Mr. Stone has no automatic standing to challenge this warrant. Thus, even if the warrant had been illegally issued, which we hold it was not, he would not have standing to contest it.

Mr. Stone next contends the second affidavit contained insufficient facts to establish probable cause for a search of Mr. Grace's residence and Mr. Stone's vehicle. He argues

the affidavit set forth no facts connecting him to the burglary at the Kusterer residence and failed to show the credibility and reliability of two police informants.

 An affidavit is sufficient to establish probable cause for a search if it contains facts from which an ordinary, prudent person would conclude that a crime had occurred and evidence of the crime could be found at the location to be searched. *State v. Fisher,* 96 Wn.2d 962, 965, 639 P.2d 743, *cert. denied,* 457 U.S. 1137 (1982). Prior convictions of a suspect are a factor which can be considered in determining whether probable cause exists. *State v. Sterling,* 43 Wn. App. 846, 851, 719 P.2d 1357, *review denied,* 106 Wn.2d 1017 (1986).

Here, the affidavit contains facts establishing that access to the Kusterer residence was obtained by prying open a window and various items including jewelry and cash were taken; in short, a burglary had occurred; neighbors Theron and Marsha Johnson and Officer Odenthal observed a dark Ford Mustang with a red fender parked adjacent to the residence on the day of the crime; Officer Odenthal later observed this identical vehicle parked at the Nora address; Mr. Stone was observed leaving that residence and was subsequently arrested while driving the Mustang; arresting officers observed women's jewelry in the Mustang; and the affiant was familiar with Mr. Stone, knew he had several prior burglary convictions, and had employed the same method of operation used in the present burglary.

The mere observation of Mr. Stone's vehicle at the scene of the crime might be insufficient to establish probable cause to believe he had committed the burglary. However, this is coupled with the police officer's knowledge of the similarity between the method employed in this burglary and that employed in previous burglaries by Mr. Stone, and the observation of items in his vehicle at the time of his arrest of the sort taken in this burglary. A reasonably prudent person would conclude evidence of the burglary would likely be found in his vehicle. Furthermore, the fact the vehicle was parked near the residence on Nora and Mr.

Stone was observed leaving that residence would equally permit a reasonable person to conclude other evidence would likely be found in that residence as well.

Again Mr. Stone argues the affidavit contains information provided by unidentified informants. The affidavit for the second warrant was more detailed than the first. It does show how police officers came to make the firsthand observations which established probable cause for the second warrant. The anonymous information itself is unnecessary to establish a factual basis for this warrant. The affidavit contains sufficient facts, based on personal observations of police officers, to support issuance of the search warrant. The admission of evidence seized in the search was proper. The judgment and sentence in the first case is affirmed.

## II

On December 28, 1987, Dennis Hanrahan returned home to find someone had broken into his home. Three days later, John Tuttle and Barbara Mellen came home and found their home was being burglarized. Ms. Mellen had seen a woman in a parked vehicle in front of their home. When she entered the house she came upon a man in the bedroom. The man immediately rushed from the house knocking Mr. Tuttle to the ground as he went out the back door. A neighbor, Andrena Hook, saw the man running from the house and alerted her husband who obtained the license number of the vehicle parked in front of the Tuttle residence.[1]

Sheriff Deputy Patrick Bunch was assigned to investigate the Tuttle burglary. He determined Connie Young was the owner of the vehicle seen at the Tuttle burglary, but he was unable to locate her. Deputy Bunch just happened to discuss the case with Detective Madsen, who mentioned Mr. Stone as a possible suspect based on similarity of method of operation. Deputy Bunch contacted Mr. Stone, who was in

---

[1]Mrs. Hook had earlier observed the vehicle in front of the Tuttle residence with two occupants—a man and a woman. She saw the man get out and go around behind the Tuttle residence.

jail awaiting trial on the Kusterer burglary, and asked him to identify a photograph of Ms. Young. Mr. Stone identified her, and in response to further questioning, told Deputy Bunch she was living with the Graces on Nora. Deputy Bunch obtained the Graces' telephone number from Detective Madsen and spoke with Mrs. Grace who told him Ms. Young was no longer living with them. He asked Mrs. Grace to have Ms. Young call him, which she did the next day. At Deputy Bunch's request, Ms. Young voluntarily came to his office. He gave her *Miranda* warnings and questioned her about the burglaries. Ms. Young admitted helping Mr. Stone commit several burglaries, assisted the officers in their investigations, and testified against Mr. Stone at trial. Mr. Stone was convicted of the Hanrahan and Tuttle burglaries.

Mr. Stone contends because he was not advised of his *Miranda* rights by Deputy Bunch and because his answers enabled the police to locate Ms. Young, her testimony should have been suppressed.

A criminal suspect must be advised of his Fifth Amendment rights prior to any custodial interrogation by an agent of the State. *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966); *State v. Sargent,* 111 Wn.2d 641, 762 P.2d 1127 (1988).

█ Unquestionably, Mr. Stone was in custody, had been arraigned, and had counsel appointed for him when Deputy Bunch interviewed him in the jail. "Interrogation" refers to "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." (Footnotes omitted.) *Rhode Island v. Innis,* 446 U.S. 291, 301, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). The standard to determine the likelihood of an incriminating response is an objective one. *Sargent,* at 651. Deputy Bunch's reason for interviewing Mr. Stone, after being advised by Detective Madsen that the burglary was similar to those committed by Mr. Stone, was to locate Ms. Young in connection with his investigation of her as a burglary suspect. His investigation was

focused on Ms. Young. Mr. Stone did acknowledge knowing her and told where she lived. This response was not an incriminating statement inculpating Mr. Stone. While *Miranda* warnings would be advisable, in this instance the failure to give them was harmless.

Assuming arguendo *Miranda* warnings were required prior to asking Mr. Stone about Ms. Young, her testimony is admissible if "'the connection between the lawless conduct of the police and the discovery of the challenged evidence has "become so attenuated[2] as to dissipate the taint."'" *United States v. Ceccolini,* 435 U.S. 268, 273–74, 55 L. Ed. 2d 268, 98 S. Ct. 1054 (1978) (quoting *Wong Sun v. United States,* 371 U.S. 471, 487, 9 L. Ed. 2d 441, 83 S. Ct. 407 (1963)). Three factors are relevant to determine whether the connection between the challenged conduct and subsequent testimony is sufficiently attenuated:

> (1) the length of the 'road' between the unlawful conduct of the police and the witness' testimony; (2) the degree of free will exercised by the witness; and (3) the fact that exclusion would permanently disable the witness from testifying about relevant and material facts, regardless of how unrelated such testimony might be to the purpose of the original illegal [conduct] . . .

*State v. West,* 49 Wn. App. 166, 168, 741 P.2d 563, *review denied,* 109 Wn.2d 1010 (1987) (quoting *State v. Childress,* 35 Wn. App. 314, 316, 666 P.2d 941, *review denied,* 100 Wn.2d 1031 (1983)).

As to the first factor, the "road" from Deputy Bunch's questioning of Mr. Stone to Ms. Young's testimony is short, since Mr. Stone's answers led police directly to her. It does not support attenuation. As to the second factor, when contacted, Ms. Young came to the sheriff's office voluntarily. She was given and waived her *Miranda* rights. Later she affirmatively assisted officers in locating houses Mr. Stone had burglarized. There was no evidence of duress. The record establishes that she exercised her own free will

---

[2]Attenuate: "to make thin or slender . . . to lessen the amount, force, or value of . . . WEAKEN". *Webster's Third New International Dictionary* 141 (1969).

both in her statements to police and in her testimony at trial. This factor alone is sufficient to establish the requisite attenuation for her testimony to be admitted. *See West,* at 168–69. As to the third factor, her testimony included not only evidence connecting Mr. Stone to the Tuttle burglary, which was the crime Deputy Bunch was investigating when he asked Mr. Stone of Ms. Young's whereabouts, but also evidence of Mr. Stone's involvement in the Hanrahan burglary of which Deputy Bunch had no knowledge of Mr. Stone's involvement. To that extent, the third factor shows some attenuation to the Hanrahan burglary.

Additional factors considered in *West* to determine the attenuation between police misconduct and witness testimony are:

> (1) the stated willingness of the witness to testify; (2) the role played by the illegally–seized evidence in gaining the witness' cooperation; (3) the proximity between the illegal behavior, the witness' decision to cooperate and the actual testimony at trial; and (4) the police motivation in conducting the search.

*West,* at 170 (quoting *United States v. Hooton,* 662 F.2d 628, 632 (9th Cir. 1981), *cert. denied,* 455 U.S. 1004 (1982)).

Here, the record reflects (1) Ms. Young's willingness to give statements to sheriff's deputies and to testify at trial; (2) nothing in Mr. Stone's statements of her whereabouts was used to gain her cooperation; and (3) the trial and Ms. Young's testimony took place more than 6 months after Deputy Bunch questioned Mr. Stone in jail. To the extent Deputy Bunch's questioning of Mr. Stone was part of a routine investigation, having had his conversation with Detective Madsen, his motivation may be questionable. However, Detective Madsen's comments supplied a quick lead to locate Ms. Young, which was the investigator's immediate problem. We find no error in admitting Ms. Young's testimony.

█ Finally, Mr. Stone contends Deputy Bunch's inquiry of him violated his Sixth Amendment right to counsel. This constitutional right to counsel "attaches only when formal judicial criminal proceedings have been initiated against a

defendant." *State v. Dictado,* 102 Wn.2d 277, 294, 687 P.2d 172 (1984). Deputy Bunch interviewed Mr. Stone on January 13, 1988. The information charging him with the Hanrahan and Tuttle burglaries was not filed until February 26. On the day Deputy Bunch interviewed him, Mr. Stone had no Sixth Amendment right to counsel during the jail interview since no criminal proceedings relating to those two burglaries had been initiated. *See State v. Stewart,* 113 Wn.2d 462, 469–78, 780 P.2d 844 (1989).

The judgment and sentence in the second case is affirmed.

GREEN and SHIELDS, JJ., concur.

Review denied at 114 Wn.2d 1013 (1990).