[No. 19221-1-III.  Division Three.  March 15, 2001.]

THE STATE OF WASHINGTON, *Respondent*, v. ROB JOSEPH ANDERSON, *Appellant*.

*James E. Egan*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Terry J. Bloor, Deputy*, for respondent.

SWEENEY, J. — Probable cause to issue a search warrant requires some showing that evidence of criminal activity or a crime will be found in the place to be searched. *State v. Perrone*, 119 Wn.2d 538, 551, 834 P.2d 611 (1992). Reduced to its essence here, the information the police had was that

Joshua Edwards was watering plants at Rob Anderson's home, and that Mr. Edwards was wanted on a recent misdemeanor warrant for escape. Report of Proceedings (RP) at 23-25. Mr. Edwards' address was elsewhere. This information does not justify a search of Mr. Anderson's home for Mr. Edwards and so we reverse his conviction.

## FACTS

Benton County Deputy Sheriff Stephen Caughey was patrolling the Finley area on May 23, 1999. He saw Brad Burgess riding a dirt bike near the home of Rob Anderson. He knew Mr. Burgess had a suspended driver's license. Deputy Caughey suspected that methamphetamine was being manufactured at the Anderson house.

Deputy Caughey followed Mr. Burgess for some distance, then lost him. He returned to Mr. Anderson's place where he saw someone watering plants on one side of the house. He thought it might be Mr. Burgess. Deputy Caughey approached the man, but immediately realized it was not Mr. Burgess. The man was Joshua Edwards. Deputy Caughey asked Mr. Edwards for his identification. Mr. Edwards produced an ID card that listed a Kennewick address. Deputy Caughey asked Mr. Edwards if he had any outstanding warrants. Mr. Edwards said he did not.

Deputy Caughey wrote down Mr. Edwards' name and telephone number, then turned to check for outstanding warrants and talk to a woman who came to the door. The woman gave Deputy Caughey permission to look for Mr. Burgess in an outbuilding on the property. The building was locked. And Deputy Caughey could see nothing of interest by peering through a hole. Meanwhile, Mr. Edwards left. Deputy Caughey guessed he had gone inside the house. But he did not see him do so. RP at 36.

Deputy Caughey returned to the station and ran further checks on Mr. Edwards. He learned that Mr. Edwards was part of a Benton County work crew. On May 26 (three days after meeting Mr. Edwards), Deputy Caughey talked to

Officer Farrell, who supervised the work crew. Officer Farrell told him Mr. Edwards had missed one or two days of work crew. Jail records reflected the same Kennewick address and phone number displayed on Mr. Edwards' ID card. Officer Farrell told Deputy Caughey he had left several messages for Mr. Edwards at the Kennewick number. But Mr. Edwards had not called back.

Officer Farrell obtained a warrant for Mr. Edwards' arrest for third degree escape, a misdemeanor. Deputy Caughey then obtained a search warrant for both the Anderson property and the Kennewick address.

In his affidavit in support of the search warrant, Deputy Caughey stated his belief that Mr. Edwards was "possibly" residing at the Anderson house. He also said that a warrant was out on Mr. Edwards for escape, that Mr. Edwards listed his address as Kennewick, and that Deputy Caughey had seen him watering plants in the Anderson yard. The affidavit recites that Mr. Edwards "had gone in and out of the residence unhindered. It is unknown if Edwards, Joshua is living at either 402 W. 48th [Kennewick] or 203212 E. Hwy 937 [Anderson's]." Def.'s Ex. 1. The affidavit continues: "While contacting Edwards and running a warrants check, he ran from me before I had received a return, leading me to believe he was possibly wanted. Edwards also has numerous failures to appear for court, for the same charges, showing he has total disregard for the authority of the courts." Def.'s Ex. 1. A warrant was issued to search for Mr. Edwards at both places.

No attempt was made to contact Mr. Edwards or serve the warrant at his Kennewick address.

Later that same afternoon, nine officers in nine squad cars converged on the Anderson home with guns drawn. They split into two teams, one to the house and one to the outbuilding. One officer rapped at the locked door of the outbuilding and announced, "Sheriff's Department." Deputy Caughey kicked in the door. Mr. Edwards was one of three adults inside. The officers entered with guns drawn and ordered everyone to hit the floor, face down. Several

officers had semiautomatic rifles. Deputy Caughey had briefed them before the raid to keep an eye open for methamphetamine paraphernalia. The other team took the house with drawn guns and ordered the people down.

The occupants of the outbuilding, including Mr. Edwards, were handcuffed and taken outside. Deputy Caughey then recognized Mr. Edwards for the first time. Deputy Caughey went back inside the shed to look around. He saw a propane tank with a blue coating on the nozzle, which he recognized as methamphetamine manufacturing equipment. A telephonic warrant was obtained to search further.

They found finished methamphetamine and ingredients. The State charged Rob Anderson with manufacturing methamphetamine. Mr. Anderson moved to suppress the evidence. The court denied his motion and convicted him on stipulated facts. He appeals the denial of his CrR 3.6 motion.

## DISCUSSION

AFFIDAVIT IN SUPPORT OF SEARCH WARRANT.

Mr. Anderson complains that the supporting affidavit to search for Mr. Edwards says only he "possibly" lives at the Anderson residence. The State responds that the fact that Deputy Caughey had seen Mr. Edwards watering plants at the Anderson residence just three days prior, and coming and going unhindered, establishes the required nexus between the person and the place to be searched.

■■ Standard of Review. A judge's finding of probable cause to issue a warrant is reviewed for abuse of discretion. *State v. Garcia*, 63 Wn. App. 868, 871, 824 P.2d 1220 (1992) (citing *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869 (1980)). Great deference is given to the issuing judge's determination of probable cause. *State v. Coates*, 107 Wn.2d 882, 888, 735 P.2d 64 (1987). All doubts are resolved in favor of the warrant. *State v. Kennedy*, 72 Wn. App. 244, 248, 864 P.2d 410 (1993). The magistrate is entitled to make commonsense inferences from the facts in the warrant

affidavit. *Id.*; *State v. Cherry*, 61 Wn. App. 301, 304, 810 P.2d 940 (1991). The burden of proof is on the defendant moving for suppression to establish the lack of probable cause. *State v. Trasvina*, 16 Wn. App. 519, 523, 557 P.2d 368 (1976).

■ Scope of Review. This court looks at the information available to the issuing judge. *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988). Facts arising later are immaterial unless they were reasonably inferable at the time the warrant issued. *State v. Goble*, 88 Wn. App. 503, 508, 945 P.2d 263 (1997).

■ Sufficiency of Affidavit. Probable cause requires facts sufficient for a reasonable person to conclude that evidence of criminal activity will be found in the place to be searched. *State v. Perrone*, 119 Wn.2d 538, 551, 834 P.2d 611 (1992). It must establish circumstances that extend beyond mere suspicion or personal belief. *State v. Hauser*, 19 Wn. App. 506, 509, 576 P.2d 420 (1978). Mere speculation will not do. *State v. Rangitsch*, 40 Wn. App. 771, 780, 700 P.2d 382 (1985). The magistrate may, however, draw reasonable inferences from the surrounding circumstances. *Garcia*, 63 Wn. App. at 873.

■ Deliberate material misrepresentations in a warrant affidavit are stricken, and the validity of the warrant is determined from what remains. *State v. Garrison*, 118 Wn.2d 870, 827 P.2d 1388 (1992). Innocent or negligent mistakes will not invalidate the warrant. The defense must make a preliminary showing of intentional lies or reckless disregard for the truth. *Id.* at 872-73. If the affidavit without the misrepresentation does not establish probable cause, the motion to suppress should be granted. *Id.* at 873. The fact that the affiant's information later turns out to be inaccurate or even false is of no consequence if the affiant had reason to believe those facts were true. *State v. Cord*, 103 Wn.2d 361, 369, 693 P.2d 81 (1985).

Deputy Caughey's affidavit includes two material misrepresentations. One, that Mr. Edwards had gone in and out of the dwelling unhindered, as if he lived there. Two, that Mr.

Edwards ran away from Deputy Caughey. The effect was to exaggerate the need for more than the usual procedures to locate a misdemeanor suspect. At the suppression hearing, Deputy Caughey again asserted unequivocally that Mr. Edwards went inside the house. But on cross-examination he conceded that he was only guessing, and that he simply lost sight of Mr. Edwards. Deputy Caughey did not testify that Mr. Edwards fled, but only that he wandered off. But Mr. Edwards had a right to wander off. This was a consensual encounter. *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980); *State v. Mennegar*, 114 Wn.2d 304, 310, 787 P.2d 1347 (1990).

Also, the arrest warrant was recent. But Deputy Caughey asserted in the affidavit that Mr. Edwards had failed numerous times to appear in court on the same charges. This falsely implied that the warrant was old. Def.'s Ex. 1.

The CrR 3.6 hearing was interrupted for about four months (October 1, 1999 to January 21, 2000). When the hearing resumed, the court had no present recollection of the earlier proceedings or Deputy Caughey's testimony. The prosecutor read from the record Deputy Caughey's direct testimony that he saw Mr. Edwards go in the house, representing that the record was consistent with the affidavit. The defense reminded the court of Deputy Caughey's concession on cross that this was false. The court also asked counsel the length of time between Deputy Caughey's first encounter with Mr. Edwards and the serving of the warrant. The prosecutor assured the judge that it was the same day. Mr. Edwards' counsel later corrected this error.

■ Excised and supplemented, as Mr. Anderson suggests, the affidavit seeks authority of law to invade the home of a third party based on a fresh misdemeanor warrant, of which service has yet to be attempted at the suspect's own address, and the fact that the suspect was observed three days before watering flowers in the third party's yard. This is insufficient probable cause to support a search warrant for the home of a third party. The fact that Mr. Edwards was found on the premises when the warrant

was served is not material, because it was not known to the judge when he issued the warrant.

The officers already had the power to enter Mr. Edwards' own home to serve the arrest warrant. *State v. Williams*, 142 Wn.2d 17, 23-24, 11 P.3d 714 (2000) (citing *Steagald v. United States*, 451 U.S. 204, 214 n.7, 101 S. Ct. 1642, 68 L. Ed. 2d 38 (1981); *Payton v. New York*, 445 U.S. 573, 603, 100 S. Ct. 1371, 63 L. Ed. 2d 639 (1980)). But there must be strong justification for forcefully entering even the suspect's own residence in the case of a minor offense—here a misdemeanor. *State v. McKinney*, 49 Wn. App. 850, 857, 746 P.2d 835 (1987) (citing *State v. Chrisman*, 100 Wn.2d 814, 822, 676 P.2d 419 (1984)). When appropriate, the fugitive may even be given the opportunity to voluntarily surrender himself. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998).

What the State was required to establish in this affidavit was justification to invade the home of parties not named in the warrant.

■ Washington Constitution Controls. We analyze police entry into private dwellings under our constitution article I, section 7, and apply different standards than the Fourth Amendment. *McKinney*, 49 Wn. App. at 855-56. Constitution article I, section 7, provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Washington is guided by the sanctity-of-the-home analysis in *Payton*. *Chrisman*, 100 Wn.2d at 820. The existence of a warrant to search the premises does not necessarily make a search lawful. *See, e.g.*, *State v. Richards*, 136 Wn.2d 361, 962 P.2d 118 (1998) (knock and announce).

■ But even under the Fourth Amendment, the issuing magistrate must weigh the strength of the evidence favoring the proposed search against the individual's interest in protecting his own liberty and the privacy of his home. *Steagald*, 451 U.S. at 212. The existence of an arrest warrant and the belief that the subject may be a guest in a third party's home is insufficient legal authority to enter the home. *Id.* at 213.

The third party's privacy interest in being free from unreasonable invasion of his home is distinguishable from the suspect's interest in avoiding unreasonable seizure. *Steagald*, 451 U.S. at 213. It is the rights of the homeowner that the issuing magistrate must balance with the necessity for the search. *United States v. Prescott*, 581 F.2d 1343, 1349 (9th Cir. 1978). Unless the third party's interests are considered, the search is no more reasonable than if no warrant had been issued. *Steagald*, 451 U.S. at 216. To allow an arrest warrant for a nonviolent misdemeanor to create *carte blanche* for searching the homes of third parties creates the risk of the sort of abuse complained of here: using the arrest warrant as a "pretext for entering a home in which the police have a suspicion, but not probable cause to believe, that illegal activity is taking place." *Id.* at 215. The reason for requiring a search warrant separate from the arrest warrant is to interpose a neutral magistrate between the police and unlawful pretextual searches. *Id.* at 212, 216.

When prevention fails, suppression is an appropriate redress. *Steagald*, 451 U.S. at 215.

Deputy Caughey's affidavit was insufficient to establish probable cause to search Mr. Anderson's premises.

The conviction is reversed.

KURTZ, C.J., and SCHULTHEIS, J., concur.